***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to either receive further evidence or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms with some modifications of the findings of fact, the Opinion and Award of the Deputy Commissioner. The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in an executed Pre-Trial Agreement as:
 STIPULATIONS *Page 2 
1. The parties are bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
2. Wake County Public School System (hereinafter referred to as Defendant) is self-insured, and Key Risk Management Services, Inc. is the administrator.
3. An employee/employer relationship existed between Plaintiff and Defendant at all times relevant herein, including April 27, 2004, the date of the accident in question.
4. Defendant accepted liability in this matter pursuant to an Industrial Commission Form 63 dated May 25, 2004. Pursuant to that agreement, Plaintiff received temporary total disability compensation beginning April 27, 2004, and continuing until she returned to work in February 2007 at Rose's in Zebulon. Plaintiff is currently receiving temporary partial disability compensation.
5. At the time of the injury giving rise to this claim, Plaintiff's average weekly wage was $287.40, yielding a weekly compensation rate of $191.61.
6. Defendant filed an Industrial Commission Form 24 Application to Terminate or Suspend Payment of Compensation on November 18, 2005. The parties participated in an informal telephonic hearing on January 12, 2006, and on January 23, 2006, Special Deputy Commissioner Meredith Henderson filed an Administrative Decision and Order denying the application.
7. In addition, the parties agreed to stipulate to the following medical records:
 (a) Doctor's Urgent Care — April 27, 2004 through May 12, 2005 (three (3) pages);
 (b) Capital Orthopedic Sports Medicine — May 18, 2004 through October 27, 2005 (35 pages); *Page 3 
 (c) Carolina Rehabilitation Services — May 18, 2004 through July 23, 2005 (two (2) pages);
 (d) Hands On Physical Therapy — May 24, 2004 through March 31, 2005 (37 pages);
 (e) Raleigh Radiology — July 17, 2004 (one (1) page);
 (f) Wilson Regional MRI — February 11, 2005 (one (1) page).
8. The parties also agreed to stipulate to all Industrial Commission forms and Orders with respect to this claim, all discovery requests and responses, and all relevant employment and payroll records.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner in this matter, Plaintiff was 42 years old. She began working for Defendant in April 1998. Plaintiff sustained a compensable injury on April 27, 2004, while working as a child nutrition services assistant, when she injured her right shoulder. At that time, Plaintiff was working as a cashier during breakfast five (5) days a week, and as a lunch cashier three (3) days a week. When Plaintiff was not working as a cashier, she assisted in the kitchen two (2) days a week. Plaintiff's duties working in the kitchen included food preparation, cleaning, re-stocking, mopping, and sweeping.
2. Plaintiff presented to Dr. Ronald Alan Summers on May 18, 2004 for complaints of right shoulder pain. Dr. Summers initially diagnosed Plaintiff with impingement syndrome and partial rotator cuff tear, but later determined that Plaintiff did not have a rotator cuff tear. *Page 4 
Dr. Summers continued to examine and treat Plaintiff thereafter, and when Plaintiff returned on September 3, 2004, she complained of radiating pain localizing into the neck, which led Dr. Summers to examine more of her cervical spine to determine if that had some involvement in her symptoms. However, x-rays of her neck were normal, and examination of her shoulder was much less consistent at that time with impingement syndrome, leading Dr. Summers to conclude that Plaintiff's diagnosis was "a little less clear," and that from a physical standpoint, "the impingement syndrome and partial rotator cuff tear was not bothering her." Dr. Summers further noted that the impingement syndrome seemed to have improved. Dr. Summers' diagnosis at that point was "shoulder pain of uncertain etiology."
3. In September 2004, Dr. Summers determined that Plaintiff could return to light duty work, but according to Dr. Summers, when Plaintiff discovered that he put her back to light duty work, Plaintiff and her boyfriend become quite "distressed." Dr. Summers felt that Plaintiff's shoulder pain was improved, and that it was reasonable for her to return to some light duty work, and reasonable for her to be able to tolerate work within the restrictions he provided to her.
4. Dr. Summers continued to periodically examine Plaintiff, and on April 1, 2005, he determined that she was at maximum medical improvement, and that he had "essentially nothing" further to offer her from an orthopaedic standpoint.
5. Dr. Summers re-examined Plaintiff on October 11, 2005, despite having released her, because of her continued complaints of neck and shoulder pain. Upon examination, it was Dr. Summers' impression that Plaintiff's exam was "essentially unchanged," but it was his recommendation to obtain a nerve conduction study to make sure that there was not some neuropathy present. Plaintiff underwent that testing in late October 2005, and then returned to *Page 5 
Dr. Summers on November 4, 2005, with the results of that test being interpreted as "normal." Dr. Summers could not find any conclusive injury or pathology to support Plaintiff's subjective complaints of pain and weakness.
6. In the meantime, in September 2005, Tammy Coates, a vocational consultant, obtained a job analysis for the cashier position with Defendant, and discussed the position with Plaintiff. Plaintiff did not think that she could perform the job, as she was afraid that she would hurt her arm. Ms. Coates sent the job analysis to Plaintiff's counsel on September 23, 2005, and sent it to Dr. Summers on October 4, 2005. Plaintiff told Ms. Coates that her attorney advised her not to accept the position, without giving any reason why she was not going to accept it.
7. Dr. Summers reviewed the position and felt that it was suitable, because in looking at the data in her examination and the nerve conduction study findings, compounded with the lack of an identifiable diagnosis to support her subjective complaints, it was difficult for him to say that Plaintiff should have a restriction of 20 or 25 pounds. Dr. Summers also felt that plaintiff would be able to lift 50 pounds on an "occasional" basis, and would also be able to perform clean-up work, mop floors, and perform other duties assigned in the cafeteria. Dr. Summers further explained that when he previously assigned light duty restrictions to Plaintiff, he had inappropriately done so to pacify Plaintiff and her boyfriend, so that they would no longer continue to create a scene in his office at checkout, disturb other patients, and continue to create a hostile environment.
8. According to Marilyn Moody, senior director of child nutrition services for Defendant, anyone working in the cafeteria in which Defendant offered Plaintiff employment could obtain help to lift heavy items, if requested, or assistance to perform any other job *Page 6 
requiring physical labor. Ms. Moody did not expect employees to be lifting 50 pounds on their own.
9. Plaintiff eventually returned to work at Rose's in Zebulon, North Carolina in early February 2007. She is in charge of the baby department and the pocketbook department, which requires her to shelve pocketbooks and baby items.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff refused employment within her restrictions, according to her own treating physician, and such refusal was not justified. Consequently, the Administrative Decision and Order filed by Special Deputy Commissioner Meredith Henderson on January 23, 2006 is REVERSED, and Plaintiff is not entitled to any compensation after the date Defendant filed the Form 24, which is November 18, 2005. N.C. Gen. Stat. § 97-32 (2007).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusion of Law, the Full Commission enters the following:
 AWARD
1. The Administrative Decision and Order filed by Special Deputy Commissioner Meredith Henderson on January 23, 2006 is hereby REVERSED, and Plaintiff is not entitled to any compensation for so long as she refuses suitable employment. Defendant is allowed to terminate Plaintiff's compensation retroactive to November 18, 2005. *Page 7 
2. Each side shall pay its own costs, except that Defendant shall pay an expert witness fee of $400.00 to Dr. Kevin Paul Speer, and an expert witness fee of $525.00 to Dr. Ronald Alan Summers, if not paid by prior order.
This the ___ day of May, 2008.
 S/___________________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
S/_____________ PAMELA T. YOUNG CHAIR
S/_____________ BUCK LATTIMORE COMMISSIONER